The amount of recovery is reserved for further proceedings under Rule 131(c).

DE MATTEO CONSTRUCTION COMPANY

v.

The UNITED STATES.

No. 441–77.

United States Court of Claims.

June 13, 1979.

William H. Clendenen, Jr., New Haven, Conn., attorney of record, for plaintiff.

Ray Goddard, Washington, D. C., with whom was Asst. Atty. Gen., Barbara Allen Babcock, Washington, D. C., for defendant.

Before NICHOLS, BENNETT and SMITH, Judges.

### ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

PER CURIAM:

This case comes before the court on defendant's motion, filed May 10, 1979, requesting that the court adopt the recommended decision of Trial Judge Philip R. Miller, filed March 30, 1979, pursuant to Rule 166(c), on the parties' cross-motions for summary judgment, as the basis for its judgment in this case since neither party has filed a request for review thereof by the court and the time for so filing pursuant to the Rules of the court has expired. Upon consideration thereof, without oral argument, since the court agrees with the trial judge's recommended decision, as hereinafter set forth, it hereby grants defendant's motion and affirms and adopts the recommended decision as the basis for its judgment in this case. Therefore, it is concluded that plaintiff is not entitled to recover and, accordingly, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and the petition is dismissed.

### OPINION OF TRIAL JUDGE

MILLER, Trial Judge: Plaintiff sues for an equitable adjustment of $153,281.71 in the price of its contract with the United States Postal Service for the construction of a post office building at Hartford, Connecticut. Plaintiff claims the equitable adjustment is warranted by the standard suspension of work clause of the contract.

The Postal Service contracting officer did not at any time expressly suspend the performance of plaintiff's work, but plaintiff claims that his failure to issue a notice to plaintiff to proceed with the construction for a period of 43 days while he considered the validity of a protest by another bidder against the award of the contract to plaintiff amounted to a constructive suspension of work.

The Postal Service Board of Contract Appeals (the board) having ruled against the claim (76–2 BCA ¶ 12,172), in its petition plaintiff seeks to have the court set aside the board's findings as unsupported by substantial evidence and its decision as arbitrary and capricious, under authority of the Wunderlich Act (41 U.S.C. § 321). However, examination of the briefs in support of plaintiff's motion for summary judgment and in opposition to defendant's cross-motion reflects that there is virtually no dispute as to the pertinent facts relating to plaintiff's right to recover [1] and the only issue is whether or not the board's conclusion that plaintiff was not entitled to the relief sought is warranted by such facts.

The Invitation for Bids (IFB) was issued May 1, 1974, and the bid opening date was set forth therein as June 11, 1974. Each bidder agreed to the provision of the IFB that "upon written acceptance of this bid, mailed or otherwise furnished within *60* calendar days after the date of opening of bids," within 10 calendar days after receipt of the prescribed forms it would execute the construction contract and supply performance and payment bonds with good and sufficient surety. If awarded the contract, the bidder also agreed "to commence the work within *0* calendar days after the date of receipt of notice to proceed, and to complete the work within 620 calendar days after the date of receipt of notice to proceed."

On the June 11, 1974 bid opening date, a joint venture of Oneglia and Gervasini Building Construction, Inc., and Empire Building Contractors, Inc. (OGE), was revealed to have submitted a bid of $10,755,000 but with an added qualification that "if sales tax required add the sum of $300,000," while plaintiff bid an unqualified $11,043,000. Thereupon, the contracting officer requested an opinion from the Postal Service law department as to whether or not the OGE bid was responsive; while, in an attempt to have itself declared the low bidder, on June 18, 1974, plaintiff voluntarily advised the contracting officer that its bid already included $300,000 for Connecticut sales tax. As a result, on June 21, 1974, the contracting officer rejected the OGE bid as nonresponsive, and on June 27, 1974, wrote to plaintiff:

> Your bid, dated June 11, 1974, has been selected as the lowest responsive bid for the construction of the United States Post Office Building and related site work at Hartford, Connecticut.
>
> Enclosed are three copies of Contract No. 109450–74–R–0–011, concurrent Modification No. 1 and Payment and Performance Bond forms. Please execute the contract and concurrent Modification No. 1 and return all copies within 10 days, as well as the Payment and Performance Bonds. Upon approval of the bonds, the Contracting Officer will execute the contract and concurrent Modification No. 1 and return a signed copy of each to you. Receipt of signed copy of executed contract by you will constitute your notice to proceed with the work. Please note that column 9, P.S. Form 7390 (May 1974) of the contract provides that the period of performance shall start upon receipt of Notice to Proceed.

The concurrent modification reduced plaintiff's bid by the $300,000 referred to in its letter of June 18, 1974, subject to restoration to the extent plaintiff had to pay state sales taxes.[2]

By letter dated June 28, 1974, OGE protested the contracting officer's determination that, because it had been stated in the

---

1. The parties stipulated that the trial before the board would be limited to the issue of plaintiff's right to recover and that determination of the amount, if any, to which plaintiff was entitled would await final determination of such right.

2. Concurrent Modification No. 1 reads as follows:

   "The U. S. Postal Service and DeMatteo Construction Company hereby agree concurrent with the execution and award of this contract

alternative depending upon the applicability of state sales taxes, its bid was nonresponsive.

On July 2, 1974, plaintiff executed and returned to the contracting officer the contract together with Modification No. 1 and the required bonds. However, since OGE's protest was under active consideration by the Postal Service, the contracting officer withheld execution of the contract and its return to plaintiff.

A principal ground for OGE's protest was the confusion in the office of the taxing authorities of the State of Connecticut as to whether or not the sales tax was applicable. Before the bid opening, the state had advised bidders that the tax was applicable, but it revised its opinion after the opening. At least five of the eight bidders on the contract also came to the erroneous conclusion that the tax was applicable.

Because of the closeness of the bids and the possibility of award to another bidder or complete resolicitation of bids, plaintiff decided to participate in the proceedings on OGE's bid protest. On July 9, 1974, plaintiff wrote to the law department of the Postal Service urging prompt denial of the protest. Plaintiff also submitted documents supportive of its claim that its own bid had included $300,000 for payment of Connecticut sales tax. In addition, plaintiff asked for and obtained a conference with Postal Service officials on July 18, 1974, to make known its views orally. Plaintiff was given additional time to make post-conference submissions, and on July 22, 1974, it submitted affidavits of six of its officials that they had included provision for payment of $300,000 of sales tax in plaintiff's unqualified bid.

On August 7, 1974, within 10 working days of the last receipt of evidence from the interested parties (including plaintiff), the Postal Service's general counsel wrote an opinion rejecting OGE's bid protest. Two days later, on Friday, August 9, 1974, the contracting officer executed the contract, and, shortly thereafter, mailed it to plaintiff, although plaintiff's officer testified that it was not received until Wednesday, August 14, 1974.

Because receipt of the executed contract constituted the notice to proceed, plaintiff claims that the defendant's delay in returning the executed contract in excess of the relatively short time it should have taken to approve the bonds amounted to a constructive suspension of work by defendant. Plaintiff asserts that in anticipation of the receipt of notice to proceed within no more than 10 days from July 2, 1974, the date when it transmitted the signed contract and bonds to the contracting officer, it mobilized its men and equipment in preparation for moving them onto the construction site, but instead they had to mark time for 43 days, from July 2 until August 14. It claims that not only did it incur the needless expense of maintaining such men and machinery in the initial 43 days, but it was compelled to pour its building foundations in less favorable weather than it had anticipated in computing its bid.[3]

The Suspension of Work clause in the contract reads in pertinent part as follows:

8. *Suspension of Work:*

\*      \*      \*      \*      \*      \*

(b) If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted by an act of the Contracting Officer in the administration of this contract, or by his failure to act within the time specified in this contract (or if no time is specified, within a reasonable time), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) neces-

---

that DeMatteo Construction Company hereby reduces its bid by $300,000.00 from $11,043,000.00 to $10,743,000.00 to eliminate the amount of sales tax included in its bid. DeMatteo Construction Company is directed to and agrees to file an appropriate state exemption certificate from sales tax with the proper state authorities. In the event DeMatteo Construction Company is required to pay state sales taxes, the U. S. Postal Service hereby agrees to reimburse DeMatteo Construction Company for said sales taxes incurred and paid up to and including a maximum liability of $300,000.00."

3. The extent of such additional expenses has of course not yet been proven because of the pretermission of the quantum or damage issue until plaintiff's right to recover has been established.

sarily caused by such unreasonable suspension, delay, or interruption and the contract modified in writing accordingly. However, no adjustment shall be made under this clause for any suspension, delay, or interruption to the extent (1) that performance would have been so suspended, delayed, or interrupted by any other cause, including the fault or negligence of the contractor or (2) for which an equitable adjustment is provided for or excluded under any other provision of this contract.

Defendant's primary position is that the contract was not awarded to plaintiff until at least August 9, 1974, when the contracting officer signed it and returned it to plaintiff; hence the suspension of work clause itself was inoperative until such date and could not provide additional compensation for events preceding it.[4]

■ Defendant's view as to the date of award appears to be correct. The contracting officer's June 27, 1974 letter, upon which plaintiff relies, did not award the contract to plaintiff. It merely stated that plaintiff's bid had been "selected as the lowest responsive bid." It asked plaintiff to execute the contract form, the $300,000 modification and the performance bonds, and stated that upon approval of the bonds "the Contracting Officer will execute the contract and concurrent Modification No. 1 and return a signed copy of each to you." Further, "Receipt of signed copy of executed contract by you will constitute your notice to proceed with the work," and "the [630 day] period of performance will start upon receipt of Notice to Proceed." Thus, such letter could not reasonably have been intended or understood as being the award itself. *SCM Corp. v. United States*, Ct.Cl., 595 F.2d 595, 598–599 (1979). *Cf. Schlesinger v. United States*, 390 F.2d 702, 703, 182 Ct.Cl. 571, 574 (1968); and *Ship Construction Co. v. United States*, 91 Ct.Cl. 419, 456 (1940), *cert. denied*, 312 U.S. 699, 61 S.Ct. 737, 85 L.Ed. 1133 (1941).

That plaintiff fully understood the execution of the contract to be prospective prior to August 9 is also apparent from its correspondence with the Postal Service. In its July 9, 1974 letter to a Service staff attorney in opposition to the OGE protest, plaintiff stated that "confirmation of the award of contract to The DeMatteo Construction Company (by returning an executed copy of the contract as expeditiously as possible) [should] be made by the U. S. Postal Service to prevent additional delay." Again, on July 22, 1974, after the hearing on its opposition to the OGE protest, plaintiff wrote to the General Counsel of the Postal Service, "It is our firm position that the contract award to the DeMatteo Construction Company should be executed by the Contracting Officer as expeditiously as possible," and "We would appreciate your * * * expediting the execution of the contract by the Contracting Officer."

But, even so, it would not necessarily follow that plaintiff had no contract rights effective prior to August 9, 1974. The Postal Contracting Manual, which the Postal Service has incorporated by reference in the Code of Federal Regulations (39 C.F.R. § 601.100), provides (at § 2–404.1) that "award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation."[5] As of June 27, 1974, plaintiff had been notified it was the lowest bidder, and, apart from the intervening protest and subject to the modification and the bonds, it became entitled to the award and could have been held liable to perform.

4. Plaintiff argues that defendant is barred from taking this position, because in its answer to the petition defendant admitted the contract was awarded to plaintiff on June 27, 1974. The argument is not correct. While admissions in pleadings may be used in support of a motion for summary judgment, they cannot bar such judgment if the other documents in support of the motion show that the moving party is entitled to judgment as a matter of law. The opposing party is not prejudiced by the pleadings because he is given adequate notice and opportunity to defend by the moving papers and brief and the pleadings may be amended to conform to the evidence even after judgment. *Comprehensive Designers, Inc. v. United States*, 545 F.2d 1283, 210 Ct.Cl. 719, 722 (1976); *Roloff v. American Oil Co.*, 421 F.2d 240, 242 (2d Cir. 1970); and Court of Claims Rules 39(b) and 101(d).

5. All references herein to sections of the Postal Contracting Manual are as of June 1974.

■ Regardless of the date of actual execution, the parties could make the effective date of the contract and its clauses any date they chose. The June 27 letter implied that if plaintiff would execute and transmit to the contracting officer the agreed contract, modification, and bonds within 10 days, subject only to his approval of the bonds the latter would execute the contract and return it to plaintiff, and this would also constitute plaintiff's notice to proceed. An indication of the intended effective date of the contract is the fact that defendant retroactively dated it June 27, 1974.

It is also significant that in the proceedings before the board defendant did not contend that the suspension of work clause had no applicability until after the August 9, 1974 formal signing, but on the contrary implicitly recognized its prior applicability by contending only that the particular delay was not unreasonable within the meaning of the clause.

In this posture of the case, the board treated the contracting officer's June 27, 1974 letter as a conditional notice of award dependent only upon plaintiff's acceptance of the downward price revision contained in Modification No. 1, and plaintiff's return of the executed contract and the required bonds on July 2, 1974, as activating whatever obligation the Government might be found to have under the suspension of work clause from that day forward.

For present purposes, it is unnecessary to decide which effective date for the suspension of work clause controls, for, no matter which date is used, the result in this case must be the same.

■ Defendant argues that proof of Government fault is a prerequisite to recovery in all constructive suspension of work cases—*i.e.*, plaintiff must prove that the Government did something or failed to do something it should have done, and that this Government action or inaction interfered adversely with the contractor's performance, thus breaching the implied warranty under the contract that neither party will do anything that will frustrate or make more difficult or expensive the other party's performance of its part of the contract. Defendant is mistaken. The authorities it cites for this view of the law have to do largely with claims of damages for breach of contract rather than for equitable adjustment under the suspension of work clause. But the equitable adjustment authorized by this clause is not merely coextensive with damages for breach. *Chaney & James Construction Co. v. United States*, 421 F.2d 728, 731, 190 Ct.Cl. 699, 706 (1970). While the clause has been invoked in cases where the Government has been at fault, it has also been held applicable as a provision for allocation of financial risks of delay even where the delay has not been due to the Government's fault, dereliction or responsibility. *Fruehauf Corp. v. United States*, 587 F.2d 486, 218 Ct.Cl. —— (1978); *Merritt-Chapman & Scott Corp. v. United States*, 429 F.2d 431, 432, 192 Ct.Cl. 848, 852 (1970).

However, defendant correctly points out, the clause contains another requirement which must be met before an equitable adjustment is allowable. The performance must be suspended, delayed or interrupted "for an unreasonable period of time."

The board thought that inherent in the requirement of an unreasonable delay for purposes of the suspension of work clause is the concept that a delay can be reasonable. It concluded that—

the particular circumstances of this case constitute such a reasonable delay and accordingly find no compensable claim under the "Suspension of Work" clause. We make no holding of broad precedent here since situations may arise where the special language of the IFB, the express understanding of the parties, the frivolousness of the particular protest, or other pertinent conditions would compel the finding that the delay was unreasonable in the circumstances. All we say is that such circumstances have not been shown to be present here.

Plaintiff does not contend that the time taken to consider the protest was unreasonable for that purpose. Indeed, plaintiff does not challenge the board's finding that the processing of the OGE protest was accomplished in "a timely manner" and "was both reasonable and prompt." Rather, plaintiff's view appears to be that any delay in issuance of the notice to proceed for the

purpose of considering a bid protest by another bidder is *per se* an unreasonable suspension of work, the financial burden of which must be borne by the defendant and not the contractor.[6]

Defendant argues that the board's finding that the delay in issuing the award and notice to proceed was reasonable is a factual one which is supported by substantial evidence and, therefore, should not be set aside.

What is a reasonable or unreasonable suspension or delay is not defined by the suspension of work clause itself. But other portions of the contract and the regulations do provide guidance in this case.

First, the bid form furnished with the IFB provides that—

> The undersigned [bidder] agrees that, upon written acceptance of this bid, mailed or otherwise furnished within *60* calendar days after the date of opening bids, he will within *10* calendar days (unless a longer period is allowed) after receipt of the prescribed forms, execute Form 7390, Construction Contract, and give performance and payment bonds on Postal Service forms with good and sufficient surety. [Emphasis in original.]

Under the contract, therefore, plaintiff agreed that the Government had 60 days after the bid opening date within which to mail written acceptance of plaintiff's bid, without regard to any particular reason. The bid opening date being June 11, 1974, the IFB contemplated that the Government had until August 10, 1974, to mail written acceptance of plaintiff's bid.

The board's opinion states that the date of actual mailing is not in evidence but "Appellant's testimony is that its signed copies [of the contract] * * * were not received until August 14, 1974." However, a June 3, 1975 letter from plaintiff to the contracting officer states that on "August 9, 1974 * * * request was received from the Contracting Officer for authority to insert the date of August 12, 1974 as the

date of bond," thus indicating that the contracting officer had already notified plaintiff that the award had or was being made. Minutes of a preconstruction conference meeting held at the office of the architect on August 22, 1974, which one or more officials of plaintiff attended, states that at such meeting "It was noted for the record that notice to proceed was received by DeMatteo on August 12, 1974." August 12, 1974, was a Monday. Under all of the circumstances, plaintiff has not established that the Government did not mail acceptance of plaintiff's bid to plaintiff within 60 days from the bid-opening date, *i. e.*, by Saturday, August 10, 1974, as contemplated in the IFB.

Second, and more important, the Postal Service procurement regulations, which are codified in the Postal Contracting Manual, specifically cover the subject of the permissible contract delays which the Postal Service may incur in the consideration of bid protests. The Postal Contracting Manual provides that when a bidder obtains information on which to base a bid protest he is allowed 5 days within which to submit his protest to the contracting officer or to the General Counsel. The protester is then allowed an additional 5 days to perfect and submit a complete statement of the grounds and facts relied upon. (Manual § 2–407.-8(b).) The contracting officer is then allowed 5 days after receipt to issue his decision or to refer the protest to the General Counsel. (§ 2–407.8(c).) If the contracting officer refers the protest to the General Counsel, he is allowed 5 days within which to notify all bidders who may be affected of the filing and of the grounds on which the protest is based, and 10 days within which to file his report with the General Counsel. (§ 2–407.8(e), (f).) Any other bidder affected by the protest is allowed 10 days after receipt of notice within which to file his submission with the General Council. Both the protester and the other bidders are allowed 5 days after referral of the notice of

---

6. The only authority which plaintiff cites for this position is language it deems favorable in an opinion of the Interior Dept. Board of Contract Appeals, *COAC, Inc.*, 74–2 BCA ¶ 10,982 at 52,262. Plaintiff concedes that the language is *obiter dictum* but fails to include in its quota-

tion the concluding sentence: "Since we conclude that COAC has failed to establish that it was damaged by the delay, *we find it unnecessary to decide this question.*" (Emphasis supplied.)

protest to the General Council to request a conference with the General Council, and the latter in turn is permitted up to 10 days in which to set the conference. The General Council is then allowed up to 15 days after receipt of all submitted information in which to make his decision. (§ 2–407.8(i).) Thus, it may be observed, the Manual allows a total of 65 days for the resolution of bid protests. During this period, the Manual provides that, except where the Postal Service will be seriously injured, the award will not be made; or if already made, the best interests of the Postal Service should determine whether the contractor should be allowed to proceed or performance should be suspended, either under a mutual no-cost agreement or by unilateral stop order. (§ 2–407.8(*l*), (m).)

■ The Postal Contracting Manual is incorporated by reference in the Code of Federal Regulations (39 C.F.R. § 601.100). The Manual applies to all Postal Service procurements of property and services. (39 C.F.R. § 601.102.) The regulations specifically set forth where the Manual may be obtained or examined by contractors and others. (39 C.F.R. § 601.104.) As such regulations were issued pursuant to statutory authority (39 U.S.C. § 401), they have the force and effect of law, and, if they are applicable, they must be deemed terms of the contract even if not specifically set out therein, knowledge of which is charged to the contractor. *G. L. Christian & Associates v. United States,* 312 F.2d 418, 424, 426, 160 Ct.Cl. 1, 12, 15, *rehearing denied,* 320 F.2d 345, 160 Ct.Cl. 58, *cert. denied,* 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963); *Chris Berg, Inc. v. United States,* 426 F.2d 314, 317, 192 Ct.Cl. 176, 182 (1970); *General Builders Supply v. United States,* 409 F.2d 246, 250–51, 187 Ct.Cl. 477, 484 (1969); *Condec Corp. v. United States,* 369 F.2d 753, 757–58, 177 Ct.Cl. 958, 966–67 (1966).

■ Accordingly, it must be concluded that in entering its bid plaintiff was on notice that should one or more of its competitors file a bid protest plaintiff might be delayed up to 65 days in the award or performance of its contract. Further,

plaintiff was on notice that if the award had not been made, unless the Postal Service would be seriously injured it was not to be made until the protest was resolved, and that, even if the contract had already been awarded before the protest was filed, if the Postal Service's best interests did not require allowing the subcontractor to proceed, the contracting officer was to seek by mutual agreement for suspension of performance "on a no-cost basis," or to issue a unilateral stop order. If the contract and regulations which are a part thereof provide for a right to suspend or delay the work for a limited period under particular circumstances, the contracting officer's exercise of such right cannot be deemed unreasonable. *Chaney & James Construction Co., supra.* The risk of such delay, at least for the maximum period provided in the regulations, was one which plaintiff must be deemed to have assumed and to have provided for in its bid.

■ In fact, resolution of the protest in this case took no more than 40 days (June 28 to August 7), and plaintiff was delayed a maximum of 31 days from July 12 (the date on which it claims the Government should have approved its bond and returned the executed contract), until August 12. Thus, plaintiff was not in fact subjected to an unreasonable delay.

■ Finally, plaintiff contends that it should be entitled to recover because the Service failed to comply with Postal Contracting Manual § 2–407.8(m). This provides:

(m) Where a protest filed after award is eligible for consideration under the provisions of this paragraph, the contractor shall be furnished immediately with a notice of the protest and the basis thereof. The contracting officer shall, with the advice of counsel, determine whether or not it would be to the best interests of the Postal Service to allow the contractor to proceed, seek mutual agreement with the contractor to suspend contract performance on a no-cost basis, or issue a unilateral stop order.

Pursuant to its theory that the award had been made by the June 27, 1974 letter prior to the filing of the bid protest, plaintiff

argues that the contracting officer owed a duty to plaintiff either to allow plaintiff to proceed promptly with performance (by which plaintiff means no more than 10 days after July 2, 1974, the date when plaintiff transmitted the signed contract and the bonds); to seek mutual agreement with the contractor to suspend performance on a no-cost basis; or to issue a unilateral stop order. Plaintiff contends that had the contracting officer followed one of these alternative procedures under the regulation plaintiff would have suffered little or no damage, because: (1) the issuance of the notice to proceed would have made the site immediately available for construction; (2) an agreed-to suspension of contract performance would have given plaintiff a date or time frame for the commencement of work and allowed it to commit its men and equipment to other construction projects; (3) a unilateral stop order would have relieved it of the obligation of maintaining its performance readiness status.

But since the award had not yet been made when the protest was filed, the appropriate regulation would appear to be § 2–407.8(*l*) rather than (m). That regulation provides:

> (*l*) When a protest has been filed in accordance with the provisions of this paragraph, award will not be made until the matter has been resolved unless the head of the procuring activity, with the concurrence of the General Counsel, approves a determination by the contracting officer that the Postal Service will be seriously injured financially or otherwise by delaying award until the protest has been resolved and that, therefore, award should be made without awaiting the decision. * * *

Plaintiff does not contend that the contracting officer failed to follow § 407.8(*l*).

In any event, even if regulation § 2–407.-8(m) were applicable, apart from the requirement of immediate notice of the filing of the bid protest and its consideration by the Service (which plaintiff concedes it received), nothing in the regulation may be deemed for the benefit of the plaintiff rather than for the protection of the best interests of the Postal Service. Contrary to plaintiff's argument, even if the contracting officer had sought a mutual agreement to suspend contract performance on a no-cost basis, or issued a formal unilateral stop order when he received the protest, he could not have given plaintiff a more accurate time frame for issuance of the notice to proceed than the up to 65 days the regulations already furnished. Moreover, there was always the possibility that the bid protest might be sustained, that a new IFB could be issued and that plaintiff might never obtain the award at all. Plaintiff's active participation in the bid protest proceedings put it in as favorable a position as the contracting officer to estimate how long it would take for the General Counsel to resolve the protest.

■ Failure of a government contracting agency to abide by a provision of its own regulation is material only if the provision is for the benefit of the contractor and there is a causal nexus between the failure and the asserted financial injury to the contractor. *American Electric Contracting Corp. v. United States,* 579 F.2d 602, 613, 217 Ct.Cl. —— (1978).

## CONCLUSION

Plaintiff's motion for summary judgment is denied; defendant's cross-motion for summary judgment is allowed; and the petition is dismissed.