## GENERAL ENGINEERING & MACHINE WORKS, Appellant,

### v.

### Sean C. O'KEEFE, Acting Secretary of the Navy, Appellee.

### No. 92–1440.

United States Court of Appeals, Federal Circuit.

April 16, 1993.

---

\* Patentees do have a limited two-year reissue right to enlarge the scope of granted claims. 35 U.S.C. § 251 (1988).

Patrick J. Martell, Pettit & Martin, San Francisco, CA, argued for appellant. With him on the brief was Walter F. Pettit.

Arnold M. Auerhan, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued for appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Allen D. Bruns, Asst. Director.

Before RICH, Circuit Judge, BENNETT, Senior Circuit Judge, and NEWMAN, Circuit Judge.

BENNETT, Senior Circuit Judge.

Appellant, General Engineering and Machine Works (General Engineering) appeals from a decision of the Armed Services Board of Contract Appeals [1] (board) confirming the Navy's entitlement to reimbursement of $86,775 in material handling fees. We affirm the decision of the board.

1. *General Eng'g & Mach. Works,* ASBCA No. 38788, 92–3 BCA (CCH) ¶ 25,055 at 124,867.

## BACKGROUND

The essential facts of this controversy are not in dispute. On July 1, 1982, appellant was awarded a time and materials indefinite quantity contract, No. N00228–82–D–6028, under which supplies and services were ordered for the West Coast Shock Test Facility, San Francisco, California. The contract, which was for a term of one year, contained two options for one-year extensions of performance. The Navy exercised those options and, by modification, extended the contract for a fourth year. The last Navy order under the contract was placed on July 29, 1986.

Before the contract was awarded, the Request for Proposals issued to prospective contractors included the following language, under line item 0003, which required the contractor to insert a percentage figure to calculate the appropriate compensation for material handling costs:

Incidental material required to perform at cost plus ____% handling. Charge to be reimbursed in accordance with Section C8.

NOTE: Offeror to insert percentage figure, if any, for material handling charge. Material handling charge shall include cost of delivery of material to the work site. If none, so state. For evaluation purposes, Government estimated cost of incidental material required is: *$50,000.00*

In addition, the contract provides:

C8 COST OF MATERIALS

The cost of materials furnished pursuant to specific authorization, the written Service Orders, shall be reimbursed at the Contractor's invoice cost less any discounts taken or to be taken, *plus material handling costs.* Expendable material

costs for items such as office supplies, report paper, repair parts, etc., shall be absorbed by the contractor in his given hourly wage rates. The contractor will be required to support all material cost claims by submitting said invoices or store room requisitions therefore [sic]. Material handling costs shall include the cost of labor and transportation to the work site or West Coast Shock Facility.

(Emphasis added.)

Section I of this time and materials contract incorporated by reference several contract clauses required for all firm fixed-price service contracts. One such clause was the Defense Acquisition Regulation (DAR) 7–103.7 "Payments (1958 JAN)" clause (the 7–103.7 clause).[2] However, the contract also made reference to a second payments clause under subheading G2:

G2 INVOICING AND PAYING INSTRUCTIONS (TIME AND MATERIAL/LABOR–HOUR)

a. The contractor shall prepare his invoices (in quadruplicate unless otherwise specified) and submit them to the Ordering Officer for approval prior to payment.

\* \* \* \* \* \*

b. *Invoices shall be in accordance with the Payments clause of the contract (DAR/ASPR 7–901.6)....*

(Emphasis added.)

The DAR 7–901.6 "Payments (1972 MAY)" clause (the 7–901.6 clause) is more restrictive than the 7–103.7 clause. Specifically, the 7–901.6 clause allows for reimbursement of material handling charges only if those charges are clearly excluded from labor hour rates.[3] In addition, the 7–

---

**2.** The DAR 7–103.7 "Payments (1958 JAN)" clause reads:

The contractor shall be paid, upon the submission of proper invoices or vouchers, the prices stipulated herein for supplies delivered and accepted or services rendered and accepted, less deductions, if any, as herein provided. Unless otherwise specified, payment will be made on partial deliveries accepted by the Government when the amount due on such deliveries so warrants; or, when requested by the Contractor, payment for accepted partial deliveries shall be made whenever such payment would equal or exceed either $1,000 or fifty percent (50%) of the total amount of this contract.

32 C.F.R. § 7–103.7 (1982).

**3.** The DAR 7–901.6 "Payments (1972 May)" clause provides, in pertinent part:

The Contractor shall be paid as follows upon the submission of invoices or vouchers approved by the Contracting Officer.

(a) *Hourly Rate.*

901.6 clause is required in all time and material contracts. 32 C.F.R. § 7–901 (1982).

Appellant included a 15% material handling charge in its contract proposal as well as in each of the two contract extensions.[4] However, the material handling costs were not kept in a separate cost pool. Rather, it was appellant's accounting practice to include the material handling costs in its overhead pool. Appellant received 131 orders under the contract for services and material, but was never questioned about material handling charges throughout the term of the contract. In addition, three prior time and material contracts between the parties each made parenthetical reference to the 7–901.6 clause in sections similar to the G2 clause of the present contract.[5] In each of those contracts, appellant did not use a separate cost pool. Those contracts were audited by the government, but no questions regarding the material handling charges were ever raised.

After completion of the last order under this contract, the Navy sent a letter to appellant stating that material handling costs would be audited. The letter also requested the production of time and material cost proposals summarizing labor hours and rates as well as material costs by fiscal year. Appellant responded with the requested information which indicated

> (1) The amounts computed by multiplying the appropriate hourly rate, or rates, set forth in the Schedule by the number of direct labor hours performed, which rates shall include wages, overhead, general and administrative expense and profit.
>
> \*    \*    \*    \*    \*    \*
>
> (b) *Materials and Subcontracts.*
> (1) Allowable costs of direct materials shall be determined by the Contracting Officer in accordance with Part 2, Section XV, of the Armed Services Procurement Regulation in effect on the date of this contract. *Reasonable and allocable material handling costs may be included in the charge for material to the extent they are clearly excluded from the hourly rate.*
>
> \*    \*    \*    \*    \*    \*
>
> (e) At any time or times prior to final payment under this contract the Contracting Officer may cause to be made such audit of the invoices or vouchers and substantiating material as shall be deemed necessary. Each pay-

that the material handling fee for the years in question totaled $86,775. The Navy conducted its audit and announced, in a June 29, 1988 report of the Defense Contract Audit Agency (DCAA), that the material handling charges were unallowable since appellant had failed to maintain those costs in a separate cost pool pursuant to the 7–901.6 payments clause. The DCAA's report concluded that appellant was double billing the material handling costs by including them in both its hourly rate and its material handling rate.

The contracting officer (CO) confirmed the DCAA report and issued a demand for payment in the amount of $86,775. Appellant began making installment payments on that amount but submitted a certified claim, received by the CO on June 28, 1989, seeking reimbursement of those payments. That claim was denied by the CO, and appellant sought review before the board. Initially, the board incorporated the 7–901.6 clause into the contract by operation of law. The board then held that, although it could not ascertain whether appellant had been paid twice for material handling costs, such double payments would be assumed since, under the 7–901.6 payments clause, appellant was required to maintain material handling costs in separate cost pools. General Engineering now appeals.

> ment theretofore made shall be subject to reduction to the extent of amounts which are found by the Contracting Officer not to have been properly payable, and shall also be subject to reduction for overpayments, or to increase for underpayments, on preceding invoices or vouchers.
> 32 C.F.R. § 7–901.6 (1982) (emphasis added).

**4.** Appellant's president submitted an affidavit stating that these material handling charges covered the labor costs associated with handling the material and transporting it to the work site and the expenses incurred from ordering, receiving and inspecting the material.

**5.** The General Provisions incorporated by reference into one of those three prior time and materials contracts included the 7–901.6 "Payments (1972 MAY)" clause. The board was unable to determine if the General Provisions of the other two prior contracts referenced the 7–901.6 clause.

## OPINION

■ The parties do not dispute the board's findings of fact. The decision of the board on any question of law is not final or conclusive and is subject to de novo review by this court. 41 U.S.C. § 609(b) (1988).

In *G.L. Christian & Associates v. United States*, 312 F.2d 418, 160 Ct.Cl. 1, *reh'g denied*, 320 F.2d 345, 160 Ct.Cl. 58, *cert. denied*, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963), the Court of Claims established what has become known as the Christian Doctrine. In *Christian*, a construction contract was terminated for the convenience of the government even though the contract lacked a termination clause. 312 F.2d at 424. The contractor sued the government alleging breach of contract. The court denied the contractor's claim noting that the termination clause was required under federal procurement regulations. *Id.* at 427. As the court explained:

> [T]he Armed Services Procurement Regulations were issued under statutory authority, those regulations, including Section 8.703, had the force and effect of law.... If they applied here, there was a legal requirement that the plaintiff's contract contain the standard termination clause and the contract must be read as if it did.

*Id.* at 424 (footnote omitted). Accordingly, the court incorporated the missing termination clause into the contract.

> [W]e believe that it is both fitting and legally sound to read the termination article required by the Procurement Regulations as necessarily applicable to the present contract and therefore as incorporated into it by operation of law.

*Id.* at 427.

■ Thus, under the Christian Doctrine a court may insert a clause into a government contract by operation of law if that clause is required under applicable federal administrative regulations. However, the Christian Doctrine does not permit the automatic incorporation of every required contract clause. As the *Christian* court stated:

> The termination clause limits profit to work actually done, and prohibits the recovery of anticipated but unearned profits. *That limitation is a deeply ingrained strand of public procurement policy.* Regularly since World War I, it has been a major government principle, in times of stress or increased military procurement, to provide for the cancellation of defense contracts when they are no longer needed, as well as for the reimbursement of costs actually incurred before cancellation, plus a reasonable profit on that work—but not to allow anticipated profits.

*Id.* at 426 (emphasis added). In denying the contractor's motion for rehearing and reargument, the Court of Claims added:

> To accept plaintiff's plea that a regulation is powerless to incorporate a provision into a new contract would be to hobble the very policies which the appointed rule makers consider significant enough to call for *mandatory* regulation. Obligatory Congressional enactments are held to govern federal contracts because there is a need to guard the dominant legislative policy against ad hoc encroachment or dispensation by the executive. There is a comparable need to protect *the significant policies* of superior administrators from sapping by subordinates.

*Christian*, 320 F.2d at 350–51 (emphasis added).

Accordingly, the Christian Doctrine applies to mandatory contract clauses which express a significant or deeply ingrained strand of public procurement policy. *Clem Perrin Marine Towing, Inc. v. Panama Canal Co.*, 730 F.2d 186, 188 (5th Cir.), *reh'g and reh'g in banc denied*, 734 F.2d 1479, *cert. denied*, 469 U.S. 1037, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984) (clause requiring plaintiff to exhaust administrative remedies before bringing suit for breach of lease); *SCM Corp. v. United States*, 645 F.2d 893, 903–04, 227 Ct.Cl. 12 (1981) (clause promoting uniform treatment of "major issues" such as cost and pricing data when more than one military department is purchasing an item); *Schoenbrod*

*v. United States*, 410 F.2d 400, 404, 187 Ct.Cl. 627 (1969) (clause outlining proper pre-award negotiation procedures); *S.J. Amoroso Constr. Co. v. United States*, 26 Cl.Ct. 759, 760–61 (1992) (clause implementing requirements of Buy American Act).

However, the Christian Doctrine has also been employed to incorporate less fundamental or significant mandatory procurement contract clauses if not written to benefit or protect the party seeking incorporation. *Chris Berg, Inc. v. United States*, 426 F.2d 314, 317, 192 Ct.Cl. 176 (1970) (holding that missing "Mistake in Bids" clause required under ASPR be incorporated into the contract as requested by the government because the clause was written for the protection of contract bidders). *See Applied Devices Corp. v. United States*, 591 F.2d 635, 640, 219 Ct.Cl. 109 (1979); *American Elec. Contracting Corp. v. United States*, 579 F.2d 602, 612–13, 217 Ct.Cl. 338 (1978) (citing *Hartford Accident & Indem. Co. v. United States*, 127 F.Supp. 565, 567, 130 Ct.Cl. 490 (1955)); *Bethlehem Steel Corp. v. United States*, 423 F.2d 300, 306–07, 191 Ct.Cl. 141 (1970); *Rough Diamond Co. v. United States*, 351 F.2d 636, 642–43, 173 Ct.Cl. 15 (1965), *cert. denied*, 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966).

■ In the present case, the contract clause at issue concerns material handling costs. Material handling costs may be paid to a contractor either as a percentage of the total cost of the materials or as part of general overhead. It is therefore possible for a contractor to receive material handling cost payments twice, and such error would be difficult to verify if all funds are kept in the same cost pool by the contractor. *See, e.g., Systems Eng'g Assocs. Corp.*, ASBCA No. 21846, 77–2 BCA (CCH) ¶ 12,740 at 61,962.

The 7–901.6 clause, by requiring separate cost pools, deters such double payments and thus discourages the unnecessary and wasteful spending of government money. This purpose is sufficiently ingrained in public procurement policy to properly trigger use of the Christian Doctrine. *Chris-*

*tian*, 320 F.2d at 355 ("[T]he general policy against subjecting the Government to liability for unearned profits on military contracts is strong and important."). Accordingly, the 7–901.6 payments clause was properly incorporated into the present contract in fact and in law.

Moreover, the payment of material handling costs through both overhead rates and a percentage mark-up would constitute an impermissible cost-plus-percentage-of-cost system of contracting. 41 U.S.C. § 254(b) (1988); *see Urban Data Sys., Inc. v. United States*, 699 F.2d 1147 (Fed.Cir. 1983). Section 7–901.6 is mandatory for all time and material contracts, 32 C.F.R. § 7–901 (1982), and discourages a cost-plus-percentage-of-cost system of contracting by requiring contractors to segregate those charges in separate cost pools.

Thus, 32 C.F.R. § 7–901.6 is based upon a grant of authority stemming in part directly from 41 U.S.C. § 254(b). Federal regulations which are based upon a grant of statutory authority "have the force and effect of law, and, if they are applicable, they must be deemed terms of the contract even if not specifically set out therein, knowledge of which is charged to the contractor." *De Matteo Constr. Co. v. United States*, 600 F.2d 1384, 1391, 220 Ct.Cl. 579 (1979); *Condec Corp. v. United States*, 369 F.2d 753, 757–58, 177 Ct.Cl. 958 (1966). Once again, the 7–901 payments clause was properly incorporated into the contract.

■ Further, government contractors are presumed to have constructive knowledge of federal procurement regulations. *General Builders Supply Co. v. United States*, 409 F.2d 246, 250–51, 187 Ct.Cl. 477 (1969). Thus, appellant should have known that it was required under federal regulations to maintain separate cost pools, particularly since the payments clause upon which appellant would rely is typically used in fixed-price service contracts.

■ Appellant next argues that the 7–901.6 clause should not be incorporated into the contract based on the applicable "Order

of Precedence" clause.[6] Appellant maintains that the language providing for a 15% material handling charge takes precedence over the general provision, the 7.901.6 clause. An "Order of Precedence" clause may be consulted when an inconsistency arises in a contract. *Hensel Phelps Constr. Co. v. United States*, 886 F.2d 1296 (Fed.Cir.1989); *Sperry Corp. v. United States*, 845 F.2d 965 (Fed.Cir.1988). However, the 7–901.6 clause merely adds further restrictions to those of the 7–103.7 clause. Accordingly, the contract may be interpreted to avoid inconsistencies between the two payments clauses, and there is no need to refer to the "Order of Precedence" clause.

Nor do references to the two payments clauses create a latent ambiguity which must be resolved against the Navy. Any ambiguity in the contract would be patent, not latent, since the two payments clauses are both expressly mentioned in the contract. *Mountain Home Contractors v. United States*, 425 F.2d 1260, 1264, 192 Ct.Cl. 16 (1970). Accordingly, if appellant found the contract ambiguous, it was under a duty to inquire and proceeded at its own risk when it did not use a separate cost pool. *Newsom v. United States*, 676 F.2d 647, 649, 230 Ct.Cl. 301 (1982); *Interstate Gen. Gov't Contractors, Inc., v. Stone*, 980 F.2d 1433 (Fed.Cir.1992).

■ Finally, the Navy did not waive the requirement that separate cost pools be maintained, nor is the Navy estopped from asserting this requirement despite the Navy's failure to raise the issue of material handling charges after auditing the present contract and earlier contracts. There can be no waiver or estoppel without evidence of knowledge on the part of the Navy. *American Elec. Lab. v. United States*, 774 F.2d 1110, 1113 (Fed.Cir.1985). Here, the Navy was unaware that appellant was not maintaining a separate cost pool for material handling costs in this or the prior contracts because, as appellant acknowledges, the material costs were never audited.

### CONCLUSION

For the aforementioned reasons, the decision of the board is

AFFIRMED.

---

**6.** The contract's order of precedence clause reads:

> In the event of an inconsistency between provisions of this solicitation, the inconsistency shall be resolved by giving precedence in the following order: (a) the Schedule (excluding the Specifications); (b) Terms and Conditions of the solicitation, if any; (c) General Provisions; (d) other provisions of the contract, when attached or incorporated by reference; and (e) the Specifications.

32 C.F.R. § 7–2003.41 (1982).