# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Advanced Global Resources, LLC | )  ASBCA No. 62070 |
| | ) |
| Under Contract No. W911RQ-18-D-0001 | ) |

APPEARANCE FOR THE APPELLANT:    David Yang, Esq.
                                 Oles Morrison Rinker Baker, LLP
                                 Seattle, WA

APPEARANCES FOR THE GOVERNMENT:  Raymond M. Saunders, Esq.
                                 Army Chief Trial Attorney
                                 MAJ Wayne T. Branom III, JA
                                 CPT Jeremy D. Burkhart, JA
                                 Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS

In December 2017, respondent, the Department of the Army (government or Army) awarded a contract for information technology support services to appellant, Advanced Global Resources, LLC (AGR). A few days later, the award was protested to the Government Accountability Office (GAO), and the Army issued a stop work order (SWO) due to the protest. After GAO denied the protest, the Army lifted the SWO. AGR now seeks reimbursement of direct costs and extended home office overhead costs purportedly incurred during the SWO period. Appellant elected to proceed under the Board's Small Claims (Expedited) procedures, Board Rule 12.2. The Contract Disputes Act, 41 U.S.C. §§ 7106 (b)(4)-(5), as implemented by Board Rule 12.2, provides that this decision shall have no precedential value, and in the absence of fraud shall be final and conclusive and may not be appealed or set aside. For the reasons stated below, AGR's appeal is denied.

## FINDINGS OF FACT

On December 14, 2017, the Army awarded to AGR Contract No. W911RQ-18-D-0001 for information technology support services at the Red River Army Depot (R4, tab 1). On December 19, 2017, the Army issued Task Order 0001 and Task Order Modification 000101 under the Contract (R4, tab 2; app. supp. R4, tab 23). Neither the Base Contract nor the Task Order contained terms regarding protests before GAO or stays of performance under FAR 52.233-3 "PROTEST AFTER AWARD" (R4, tabs 1-2). That FAR clause provides that "[t]he Contracting Officer shall make an equitable adjustment in the delivery schedule or contract price, or both, and the contract shall be

modified, in writing, accordingly, if — (1) The stop-work order results in an increase in the time required for, or in the Contractor's cost properly allocable to, the performance of any part of this contract." FAR 52.233-3(b). In addition the contract contains 52.212-5 "CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS – COMMERCIAL ITEMS (DEVIATION 2013-O0019) (JAN 2017)" (R4, tab 1 at 106-07). Unlike the standard FAR provision 52.212-5, the deviation included in the contract does not incorporate 52.233-3. However, FAR 33.106 "SOLICITATION PROVISION AND CONTRACT CLAUSE" provides that "(b) The contracting officer shall insert the clause at 52.233-3, Protest After Award, in all solicitations and contracts."

The day after Contract award, on December 15, 2017, AGR entered into an employment contract with Mr. Michael McKissick (R4, tab 15b at attach. 1). On December 22, 2017, the contracting officer notified AGR to stop work under the Contract because a GAO protest of the award had been filed by the incumbent contractor (R4, tab 3; *A-B Computer Solutions, Inc.*, B-415819, 2018 CPD ¶ 128, (Comp. Gen. Mar. 22, 2018)). The task order provided for a phase in period where AGR would cross-train with the incumbent contractor (R4, tab 1 at 58). AGR performed only unbillable transition work prior to receipt of the SWO (tr. 1/45). The text of the SWO reads in relevant part:

> [I]n accordance with FAR 52.233-3, Protest After Award, AGR, LLC is hereby notified to stop performance under subject contract. AGR, LLC shall not purchase materials or services related to this Contract until notified by the Contracting Office. AGR, LLC shall take all reasonable steps to minimize incurring costs associated with this stop-work order.

(R4, tab 3) AGR acknowledged receipt of the Stop-Work Order (SWO) the same day, December 22, 2017 (R4, tab 4).

The SWO did not expressly require AGR to be "on stand-by." However, it did explain that the SWO was being issued in response to a post-award protest. (R4, tab 3) AGR elected to intervene in the protest challenging the Award, which was filed by A-B Computer Solutions (tr. 1/21, 41-42).

AGR understood that a protest at GAO would have to be resolved within a definite period of time. Specifically, Mr. Matthew Muns, Vice President of Technical Operations and co-owner of AGR, testified regarding the protest, "I believe we were told it could've been a maximum of 120 days. And I think we were told somewhere between 90 and 120 days was typical.... That's my understanding that it does have a fixed time." (Tr. 1/41-42)

2

On March 26, 2018, the Army notified AGR, "The Government Accountability Office (GAO) protest received in response to the award of Contract No. W911RQ-18-D-0001 has been resolved via denial. As a result, the 22 December 2017 Stop Work Order...is hereby rescinded." The letter, a Resume Work Order, did not direct AGR to immediately resume work. (R4, tab 5)

Also on March 26, 2018, the Contract Specialist sent an e-mail to AGR explaining that AGR was "free" to start the process of obtaining a "clearance to manage cleared personnel who may have incidental contact with classified info (but won't generate, store, or classify any)" (R4, tab 7 at 2). It ultimately took an additional two months for AGR to receive its clearance (app. supp. R4, tab 21 at 1).

Mr. Muns testified that during the period the SWO was in effect, AGR did not incur any increase in overhead costs (tr. 1/40). He additionally testified that during the period the SWO was in effect, work on the contract continued, with the incumbent contactor performing under a bridge contract with the same workforce that AGR intended to employ. The incumbent contractor continued to perform until AGR was able to secure the appropriate security clearances. (Tr. 1/40, 45) During the period the SWO was in effect, AGR directed Mr. McKissick to stop working toward the security plan, quality control plan, and "all the preliminary plans that go into managing a contract like this..." (tr. 1/22). As Mr. Muns admitted, Mr. McKissick did not do any work on the project, apart from preparing himself (tr. 1/41, 48-50). AGR continued to pay Mr. McKissick's salary during the SWO period, rather than furloughing him, putting him on unpaid leave, or releasing him from employment. AGR's employment contract with Mr. McKissick did not prevent AGR from taking these actions. (R4, tab 15b at 8; tr. 1/56)

Mr. Muns testified that, while the SWO was in effect, AGR sought replacement contracts, as AGR "pursued new business opportunities to try to make up for the shortfall in revenue that [the SWO] cost" (tr. 1/41). During the period the SWO was in effect, AGR was an offeror on at least six requests for proposals, responded to one sources sought, and was actually awarded one contract for the U.S. Fish and Wildlife Service (app. supp. R4, tabs 18-19, 26-33; tr. 1/45-47). The period of performance under the contract or the task order was not increased or changed following issuance of Task Order Modification 000101 (R4, tab 2; tr. 1/41). Mr. Muns testified that "stand by" was just "my word, but it's essentially you're waiting to start performance again until the stop work order is rescinded" (tr. 1/42-43).

On April 18, 2018, AGR submitted an uncertified "Price Adjustment Request under Contract No. W911RQ-18-D-0001" (R4, tab 8). By letter dated June 28, 2018, the Army informed AGR that it was treating the "price adjustment request" as a "Request for Equitable Adjustment." The letter contained language that conditionally granted AGR its request for direct costs, but denied its request for unabsorbed

3

overhead. (R4, tab 11) On July 12, 2018, AGR submitted a second request, titled "Price Adjustment Request under Contract No. W911RQ-18-D-0001 Red River Army Depot," again asserting that AGR was owed money under the contract, but again without asserting that the document was a claim, or containing certifying language (R4, tab 13).

On November 15, 2018, the Contracting Officer responded to AGR's July 12, 2018 letter by reiterating that the Army is treating appellant's "price adjustment request" as a "Request for Equitable Adjustment." Although the letter concluded with the sentence, "This is the Contracting Officer's Final Decision," it made no mention of a claim, nor did it mention appellate rights. The letter again contained language that conditionally granted AGR its request for direct costs, but denied its request for unabsorbed overhead. (R4, tab 14)

On December 10, 2018, AGR appealed to the Board. The government moved to dismiss the appeal for lack of a certified claim. On January 24, 2019, AGR filed a claim containing certifying language with the contracting officer (R4, tab 15). On February 8, 2019, at AGR's request and without objection from the Army, the Board dismissed AGR's initial appeal. *Advanced Global Resources, LLC*, ASBCA No. 61909, 2019 WL 989666, slip op. (Feb. 8, 2019). On April 24, 2019, the contracting officer issued his Contracting Officer's Final Decision (COFD), denying AGR's claim for unabsorbed overhead in full, and conditionally granting AGR's claim for direct costs:

> For purposes of this request only, consistent with the United States Government's (USG's) 15 November 2018 position on this matter, the USG does not take exception to AGR's request for reimbursement for $24,500.00 in idled direct labor costs attributable to the stopwork order issued near the beginning of performance under this contract resulting from a filed protest. Accordingly, the USG accepts AGR's direct cost adjustment request of $24,520.00. However, if this matter cannot be resolved through the instant claim, the USG retains its ability and right to contest this matter, in its entirety, for any subsequent requests, claims, protests or lawsuits.

(R4, tab 16) On May 13, 2019, AGR again appealed to the Board. On July 17, 2019, the Board held a hearing in this appeal.

4

I.      AGR's Direct Labor Costs

AGR asserts entitlement to $24,520 in idled direct labor costs representing Mr. McKissick's salary during the pendency of the SWO (app. br. at 6-12). The government asserts that AGR is not entitled to direct labor costs because AGR failed to minimize costs during the SWO, and because the claimed costs were not reasonable or in furtherance of the contract (gov't resp. br. at 9-13).

As a starting point for our analysis, we note that the Board has held that an order stopping work on a contract would be breach of the Government's duty not to interfere with the contractor's performance, in the absence of a contract provision giving the government the right to stop performance. *See, e.g., COMSI, Inc.*, ASBCA No. 34588, 88-1 BCA ¶ 20,245 at 102,476. As noted above, the contract and task order do not contain FAR 52.233-3 "PROTEST AFTER AWARD" which provides for cost adjustments in certain cases due to a protest of the award of a contract. Additionally, the contract contains FAR 52.212-5 "CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS – COMMERCIAL ITEMS (DEVIATION 2013-O0019) (JAN 2017)" (R4, tab 1 at 106). The Board has held that FAR 52.233-3 is incorporated by reference by the inclusion of FAR 52.212-5. *See First Division Design, LLC*, ASBCA No. 60049, 18-1 BCA ¶ 37,201 at 181,104 n.*. However, unlike the standard FAR 52.212-5, the deviation contained in the contract does not incorporate FAR 52.233-3. In situations where a contract does not contain FAR 52.233-3, the Board has held that FAR 52.233-3 is incorporated pursuant to the *Christian* doctrine, *G.L. Christian & Associates v. United States*, 312 F.2d 418 (Ct. Cl. 1963).* As noted by the Board in *COMSI*, FAR 33.106 "SOLICITATION PROVISION AND CONTRACT CLAUSE" provides that "(b) The contracting officer shall insert the clause at 52.233-3, Protest After Award, in all solicitations and contracts." *COMSI*, 88-1 BCA ¶ 20,245 at 102,476, FAR 33.106; *but see, F2M, Inc.*, ASBCA No. 49719, 97-2 BCA ¶ 28,982 at 144,332-33 (holding that FAR 52.233-3 was not incorporated by reference in a contract with a non-appropriated funding entity). Thus, we find that the contract contains FAR 52.233-3 pursuant to the *Christian* doctrine.

FAR 52.233-3(b) provides that "[t]he Contracting Officer shall make an equitable adjustment in the delivery schedule or contract price, or both, and the contract shall be modified, in writing, accordingly, if — (1) The stop-work order results in an increase in the time required for, or in the Contractor's cost properly

---

* Pursuant to the Christian doctrine, the Board may insert a mandatory clause into a government contract if the clause expresses "a significant or deeply ingrained strand of public procurement policy." *General Engineering & Mach. Works* v. *O'Keefe*, 991 F.2d 775, 779 (Fed. Cir. 1993).

allocable to, the performance of any part of this contract." However, here it is undisputed that the SWO issued as a result of the GAO bid protest did not result in an increase in the time required for AGR to perform the contract (tr. 1/41) and did not result in an increase in AGR's overhead costs (tr. 1/40). Moreover, Mr. McKissick did not perform any work pursuant to the contract during the period of the SWO for which AGR should be compensated (tr. 1/41, 48-50).

AGR relies upon our holding in *Phoenix Data Solutions f/k/a/ Aetna Government Health Plans*, ASBCA No. 60207, 18-1 BCA ¶ 37,164 for the proposition that it was reasonable to retain Mr. McKissick, and that it properly minimized its costs. (app. reply br. at 2-3). We agree with AGR that its decision to retain Mr. McKissick so as not to lose a key employee essential to the AGR's performance of the contract could be reasonable. *See* FAR 31.201-3(b). However, we disagree that AGR took reasonable steps to minimize its costs. *See* FAR 52.233-3. The facts in *Phoenix Data Solutions* differ from the facts of this appeal in several key aspects. First, in *Phoenix*, the employees were entitled to severance pay. Thus, if *Phoenix* had terminated the employees, it would have not necessarily have saved any money. *Phoenix Data Solutions*, 18-1 BCA ¶ 37,164 at 180,925. Second, in *Phoenix*, the contractor limited expenditures by cancelling travel and other avoidable expenses, but kept the employees working during the stop work order. *Id.* Here, AGR did not appropriately seek to limit its costs, but instead paid Mr. McKissick to do nothing. Finally, while the contractor in *Phoenix* initially retained its staff, as the delay evolved, the contractor took increasing steps to reduce its staffing and limit its costs. *Id.* at 180,913.

AGR also cites to *Raytheon STX Corp.v. Dept. of Commerce*, GSBCA No. 14296-COM, 00-1 BCA ¶ 30,632 and *Frazier-Fleming Co.*, ASBCA No. 34537, 91-1 BCA ¶ 23,378 for the proposition that costs paid to retain Mr. McKissick are recoverable (app. br. at 12). However, these cases are not controlling. In *Raytheon*, which is not binding on us, the GSBCA awarded costs based on its finding that the "Government closed the sites of performance and stopped work for an uncertain time frame but expected appellant to maintain its work force and resume work immediately after the shutdown." *Raytheon STX Corp.*, 00-1 BCA ¶ 30,632 at 151,223. The contractor, and its subcontractors in that appeal took various steps to minimize their costs, including furloughs, assigning employees to other contacts, and forcing employees to use vacation leave. *Id.* at 151,226-28. The facts in *Frazier-Fleming Co.* are similarly inapplicable. There, the government imposed numerous short-duration delays by restricting access to a runway, and forcing the contractor to extend its performance. *Frazier-Fleming Co.*, 91-1 BCA ¶ 23,378 at 117,288-89.

To the extent AGR relies upon the fact that the government previously offered to pay these costs, subject to AGR not appealing from the final decision (app. br. at 2), the Board performs its review *de novo* and does not defer to the findings of the contracting officer. *See, e.g., Wilner v. United States*, 24 F.3d 1397, 1401 (Fed. Cir.

1994) (*en banc*) (contracting officer's findings are not entitled to deference). Additionally, we note that, even if Mr. McKissick were to have performed transition tasks during the SWO period, this was work that was not billable to the contract (tr.1/45). Thus, AGR's claim for direct labor costs is denied.

## II. AGR's Extended Home Office Overhead

AGR additionally asserts entitlement to $123,782.40 in unabsorbed home office overhead, calculated pursuant to the Eichleay formula (app. br. at 7-12). The government asserts that AGR is not entitled to recover any costs. Similarly, the government asserts that AGR is not entitled to extended home office overhead pursuant to the *Eichleay* formula because AGR's performance period was not extended, it was not on standby, was not subject to a delay of indefinite duration, was not required to be able to resume work on the contract at full speed and immediately, and did not demonstrate that it was impractical for it to obtain replacement work (gov't resp. br. at 18-22).

> In order to receive unabsorbed home office overhead, First there must have been a government-caused delay of uncertain duration. *Interstate Gen. Gov't Contractors, Inc. v. West*, 12 F.3d 1053, 1056 (Fed. Cir. 1993). The contractor must also show that the delay extended the original time for performance or that, even though the contract was finished within the required time period, the contractor incurred additional costs because he had planned to finish earlier. *P.J. Dick, Inc. v. Principi*, 324 F.3d 1364, 1370 (Fed. Cir. 2003). Finally, the contractor must have been on standby and unable to take on other work during the delay period. *Interstate Gen.*, 12 F.3d at 1056-57.

*Nicon, Inc. v. United States*, 331 F.3d 878, 883 (Fed. Cir. 2003).

The government does not dispute that AGR was subject to a government-caused delay (gov't resp. br. at 17-18). However, the government disputes that AGR's performance was extended and that AGR was on standby (*id.* at 18). It is undisputed that the SWO did not extend the original time for performance and, as this was a contract for technology support, AGR could not have planned to finish earlier (R4, tab 1 at 58). For a contractor to establish that it intended to complete a project early, it must show that, from the outset of the contact, it "(1) intended to complete the contract early; (2) had the capability to do so; and (3) actually would have completed early, but for the government's actions." *Interstate General Government Contractors, Inc. v. West*, 12 F.3d 1053, 1059 (Fed. Cir. 1993). AGR has not established that it satisfied

7

any element of the *Interstate* test, let alone all three. As the information technology support services contract required AGR to provide support during the contract period, AGR could not "complete the contract early" as would be the case for a construction type contract.

AGR cites, once again, to our holding in *Phoenix Data Solutions*, as support for the proposition that "an extension does not need to increase the contract's period of performance to result in unabsorbed overhead..." (app. reply at 5). In *Phoenix*, unlike this appeal, an 8.5 month fixed-price transition period was the base period of the contract, and the actual delivery of services was contained in option periods. *Phoenix Data Solutions*, 18-1 BCA ¶ 37,164 at 180,908. Thus, the 9.5 month delay involved in *Phoenix*, necessarily required an extension of the performance period of the base contract, because, had the government not terminated the contract for convenience, the deadline for performance of the base period contract transition activities would have ended more than a month before the end of the stop work period. *Id.* at 180,912-13 (transition period ending March 31, 2010, but contract not terminated until May 5, 2010). Here, AGR's contract contained an unbillable transition-in before the full performance period (R4, tab 1 at 58). The performance period of AGR's contract, and task order were not extended when the SWO was lifted. While AGR is correct that a *shortening* of the performance period may impact a contractor's ability to recover its anticipated amount of overhead costs, such a change is not compensable pursuant to the *Eichleay* formula. Accordingly, we find that AGR has not established entitlement to *Eichleay* damages.

Having found that AGR failed to establish that its performance period was extended, we need not reach the question of whether AGW was on standby; however, we note that, even if AGR's performance period were extended, AGR also failed to establish that it was on standby.

Where, as here, the contracting officer did not explicitly place the contractor on standby, a contractor must establish (1) that "the government-caused delay was not only substantial but was of an indefinite duration;" (2) that "during the delay it was required to be ready to resume work on the contract, at full speed as well as immediately;" and (3) "effective suspension of much, if not all, of the work on the contract" in order to establish that it was on standby. *P.J. Dick, Inc. v. Principi*, 324 F.3d 1364, 1371 (Fed. Cir. 2003). Here, AGR fails to establish the first or second elements of the three-part test.

As the government notes, the GAO bid-protest process has a maximum duration of 100 days. 48 C.F.R. § 33.104(f). AGR's witness, Mr. Muns, acknowledged the limited duration of the protest process, although he misstated the duration as 120 days (tr. 1/41-42). AGR cites to our holding in *Phoenix Data Solutions*, for the proposition that a GAO bid protest is of an unlimited duration (app. reply at 4). However, once

8

again *Phoenix Data Solutions* involved critical facts not present in this appeal. After GAO sustained the protest in *Phoenix*, the government notified the contractor that the government would not be able to take corrective action within the sixty-day period set by regulation and provided no estimate of when it would take action. *Phoenix Data Solutions*, 18-1 BCA ¶ 37,164 at 180,913. The government waited an additional four and a half months after that letter before terminating Phoenix for convenience. *Id.* The Board explicitly relied upon the government's letter stating that it did know when it would be able to take corrective action as a basis for finding a delay of indefinite duration in the *Phoenix* appeal. *Id.* at 180,926. Here, the GAO protest was resolved during the expected timeline, and we find that AGR was not subject to an appeal of indefinite duration.

Regarding the second prong, we find that AGR was not required to be able to resume work at full speed and immediately. The Federal Circuit has held that to satisfy this prong, "the contractor must be required to keep at least some of its workers and necessary equipment at the site, even if idle, ready to resume work on the contract." *P.J. Dick*, 324 F.3d at 1371. AGR relies upon the conclusory statements of Mr. Muns at the hearing that AGR was expected to return to work immediately (app. reply at 6; tr. 1/26). However, there is no contemporaneous evidence of a government requirement that AGR be ready to resume work at full speed and immediately. Rather, the facts of the appeal compel an opposite conclusion, as this was a "rebadge" contract where AGR would employ the incumbent contractor's employees and these employees were performing under a bridge contract (tr. 1/22, 40). Thus, there was no reason for the government to require AGR to remain on standby. In contrast, in *Phoenix Data Solutions*, the government's contracting officer testified that the contractor in that appeal was required to be ready to perform upon the lifting of the stop work order in that appeal. *Phoenix Data Solutions*, 18-1 BCA ¶ 37,164 at 180,926. Further, we note that AGR did not have the necessary security clearances to resume work immediately. At most, AGR could resume the process of seeking security clearances but could not begin performance of the contract.

## CONCLUSION

For the reasons stated above, the appeal is denied.

Dated: September 10, 2019

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

9

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62070, Appeal of Advanced Global Resources, LLC, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals