ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Heartland Energy Partners LLC | ) | ASBCA No. 62979 |
| | ) | |
| Under Contract No. W912HQ-18-D-0010 | ) | |

APPEARANCE FOR THE APPELLANT:      William A. Shook, Esq.
      The Law Offices of William A. Shook PLLC
      Washington, DC

APPEARANCES FOR THE GOVERNMENT:      Michael P. Goodman, Esq.
      Engineer Chief Trial Attorney
      Jesse C. Lee, Esq.
      Siobhan Fabio, Esq.
      Engineer Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

In September 2019, appellant, Heartland Energy Partners, LLC (Heartland) was awarded a task order against a commercial items contract with the United States Army Corps of Engineers (USACE or government). Relevant to this appeal, the task order contained 11 firm-fixed-price contract line items (CLINs) for physical security consulting services. In March 2020, the USACE instructed Heartland to discontinue performance on four of the CLINs, due to the spread of the novel Coronavirus (COVID-19), and the resulting restrictions on travel and in-person training.

Rather than terminate the CLINs, the government instead attempted to negotiate with Heartland to allow Heartland to perform alternative tasks, or for a descope of the CLINs; however, the parties did not reach agreement prior to the end of the task order performance period. Heartland now contends that it is entitled to payment of the firm-fixed-price CLIN amounts, despite not having performed the required work. The government contends that its instruction to discontinue performance was an actual or constructive termination for convenience such that Heartland is entitled to compensation only for the work performed. We agree with the government that the task order was constructively terminated for convenience, and grant the government's motion for summary judgment, in part. However, we note that a termination for convenience essentially converts a firm-fixed-price CLIN to a cost-type CLIN, and, thus, that Heartland's compensation will not necessarily be limited to the amounts invoiced prior to the government's instruction to discontinue performance.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

I. *The Contract and Task Order*

On September 18, 2018, the USACE issued solicitation number W912HQ18R0009 for commercial services relating to support for its physical security mission under Federal Acquisition Regulation (FAR) Part 12, Acquisition of Commercial Items (R4, tab 81 at 1). On September 24, 2018, the USACE and Heartland entered into contract W912HQ18D0010, an indefinite delivery indefinite quantity (IDIQ) commercial items contract for physical security program support services (R4, tab 2 at 186-92). On July 15, 2019, the Humphreys Engineer Center Support Activity (HECSA) contracting officer, Wesley (Dale) Dewar, issued to Heartland a request for proposal for task order 3 (app. supp. R4, tab H1 at 1-2). Heartland submitted its proposal response on August 1, 2019, to HECSA contract specialist, David Kaplan (app. supp. R4, tab H2A at 56-61). Task order 3 was issued to Heartland on September 6, 2019, utilizing Standard Form (SF) 1449 "Solicitation/Contract/Order For Commercial Items" (R4, tab 3 at 227).

Task order 3 consisted of 11 firm-fixed-priced CLINs involving commercial services for technical, analytical, planning, and administrative support to USACE's physical security mission, and two cost-reimbursement CLINs for related travel and other direct costs (*id.* at 227-35). Each of the fixed-price CLINs had a quantity of one where the unit was the "project," or the completion of all tasks under that CLIN (*id.* at 229-34). The total price for the fixed-priced CLINs was $1,581,412.76 (*id.*). The two remaining CLINS (1012 and 1013) reflected cost reimbursement for travel costs with an estimated cost of $68,576.34 and "other direct costs" with an estimated cost of $73,869.00. (*id.* at 234-35). The CLINs provided for delivery during the period of performance of September 6, 2019 to September 5, 2020 (*id.* at 236-37). The performance work statement reflected the task sequencing and delivery schedule in more detail, with some delivery schedules being unspecified (*id.* at 242-56).

The contract incorporated various contract terms, including CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JAN 2017) at FAR 52.212-4 (R4, tab 2 at 193). The Commercial Items clause provides in relevant part:

> (c) *Changes*. Changes in the terms and conditions of this contract may be made only by written agreement of the parties.
>
> . . . .

(i)    *Payment.-* (1) Items accepted.

Payment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in this contract.

. . . .

(l) *Termination for the Government's convenience.* The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

FAR 52.212-4.

The payment instructions in task order 3 directed Heartland to "bill the government on a monthly basis" (R4, tab 3 at 264). The government directed Heartland to bill 1/12th of each of the task order's total firm-fixed-price CLINs each month, rather than billing for services as performed (R4, tab 8a at 410). Additional invoice instructions specify that "[t]he Government shall pay the Contractor as full compensation for all work required, performed and accepted under this contract, inclusive of all costs and expenses, the firm-fixed price stated in this contract" (R4, tab 3 at 282). On March 17, 2020, the parties executed a bilateral modification (mod 2) reducing the scope of CLIN 1010, making other changes, and decreasing the total task order price by $35,031 to $1,688,827.10 (R4, tab 5 at 331).

3

## II. *COVID -19 Restrictions and Efforts To Modify The Scope of the Task Order*

On March 27, 2020, the government informed Heartland that, due to COVID-19 restrictions, it was to discontinue performance on CLINs 1004, 1008, 1010, and 1011 (R4, tab 8a at 410). The notification was by memorandum signed by David Kaplan, a Contract Specialist, without authority to modify the contract (*id.*; R4, tab 3 at 264, app. resp. at attachment 1). Heartland was further instructed to discontinue invoicing for the affected CLINs (R4, tab 8a at 410). Additionally, per the guidance received from HECSA contracting, for all future invoices Heartland was directed to only invoice for services actually delivered for the CLIN, rather than billing 1/12th of the CLIN amount each month. The instructions referred to the previous direction to invoice in equal increments for the duration of the period of performance as an "incorrect instruction." (*Id.*)

The CLINs subject to the March 27, 2020, direction to discontinue performance involved travel and in-person meetings that did not comply with then-current guidance by the Department of Defense (DoD) (*id.*). CLIN 1004 Task 3 – Program Protection Review involved, among other things, Heartland travelling to seven USACE locations to brief the local commander, conduct interviews of local physical security program leaders, and record observations of local physical security programs (R4, tab 3 at 245-46). CLIN 1008 Task 7 Physical Security Program/Project Management Program of Instruction involved Heartland conducting two separate training sessions in a classroom setting with 30-40 USACE security personnel. One session was to be in the Washington, DC area, and the other was to be at a location to be determined. (*Id.* at 250-51) Heartland performed a session in Alexandria, Virginia in November 2019 (app. resp. at attachment 11 at 1 - 5). Consistent with the government's invoicing instructions, Heartland did not bill the actual cost of that session but rather billed 1/12th of the total CLIN for the month of November 2019 (app. resp. at attachment 4 at 1). CLIN 1010 Task 9 – Conduct Vulnerability Assessments for Nuclear Reactor, SNM, or Chemical Agents at 3 CONUS Sites, involved Heartland conducting assessments of USACE sites, to be determined, with nuclear reactors, special nuclear material, chemical agents, and/or biological select agents or toxins (R4, tab 3 at 254-56). CLIN 1011 Task 10 – Department of the Army Security Guard (DASG) and Contract Security Guards (CSG) Training, involved Heartland conducting two separate eight-day in-person training sessions for approximately 30 attendees each. Heartland was to instruct attendees in fire and range risk management for live-fire qualification in 9MM pistols and/or additional weapons systems. (*Id.* at 256)

On March 30, 2020, the contract specialist transmitted a proposed modification (mod 3) reflecting the removal of the affected tasks and requesting that Heartland submit a price proposal to reflect the proposed reduction in scope (R4, tabs 9 at 411, 9a at 412-58). The communication also noted the payments paragraph of the commercial items clause at 52.212-4(i), reiterating, "Heartland may be paid for

4

services actually performed and accepted" (R4, tab 9 at 411). On April 1, 2020, in response to the proposal, Heartland noted that the government could not unilaterally modify the contract, but could terminate for convenience of the government, stating:

> In other words, it is my understanding that the government does not have the right to make unilateral changes in the contract. I do understand that the government has the right to do a partial termination for its convenience under 52.214-4(l). Please confirm that I am to treat the descoping as a partial termination for the government's convenience.

(R4, tab 11 at 461) The government did not respond to Heartland's question. On April 9, 2020, Heartland transmitted its reduction in scope estimate for mod 3, reflecting a reduction of $216,878.18 under the assumption that it would invoice under mod 3 starting April 2020 (R4, tabs 12 at 463, 12a at 465). On April 24, 2020, representatives of the government and Heartland met via telephone to discuss the proposed changes to the contract, but no agreement was reached (R4, tabs 14 at 468, 15 at 471).

In addition to removing the affected tasks from task order 3 the parties discussed a resolution that would, among other things, add an additional program of instruction to CLIN 1008; add two training sessions to CLIN 1011; redistribute funding from CLINs 1004 and 1010 to CLINs 1008 and 1011 in the amount of $146,004.43; not process invoices attributed to CLINs 1004 and 1011 until COVID restrictions were lifted; and, extend the period of performance for CLINs 1008 and 1011 by 12 months (R4, tabs 16a at 473-74, 18 at 511-12). On May 5, 2020, Paul Gates, representative of Heartland, professed Heartland's consent to the changes to the performance work statement but had questions about invoicing (R4, tab 19 at 513). On May 18, 2020, Heartland submitted an invoice for April 2020 that omitted CLINs 1004 and 1010[1] per the contract specialist's instruction (R4, tabs 24 at 534, 24a at 535). This invoice was accepted (R4, tab 25 at 536).

On May 29, 2020, the contract specialist transmitted via e-mail the draft modification 3 to the task order, incorporating the parties' draft changes and providing "I anticipate questions so let me know if you want to schedule a call with the [contracting officer] and myself" (R4, tab 26 at 538). On June 3, 2020, Mr. Gates responded with concerns about the schedule and the possibility that in-person training sessions may not be possible until at least February 2021. He suggested scheduling

---

[1] It is not clear from the record why Heartland was permitted to bill for CLINs 1008 and 1011, but it may have been based on the assumption that work would be performed on the two CLINs pursuant to the proposed resolution.

training sessions in the then near future with a contingent plan to move to a remote environment should COVID restrictions remain in place by the scheduled date. (R4, tab 28 at 588) On June 5, 2020, Heartland sent the government its proposed adjusted invoicing schedule (R4, tabs 29 at 590, 29a at 592). On July 23, 2020, Heartland began invoicing the government for the affected tasks, based on the government's prior instruction to invoice equal monthly amounts. On July 28, 2020, invoices for May 2020 and June 2020 were rejected by the government for "charging for services that were not rendered nor received . . . ." (R4, tabs 37 at 623-24, 37a at 625, 37b at 626)

On July 30, 2020, the government sent Heartland a memorandum reflecting the changes to task order 3 resulting from COVID 19 restrictions. The changes were to remove any performance on CLINs 1004, 1008, 1010, and 1011, as well as the flexibly-priced CLIN 1012. (R4, tabs 38 at 627, 38a at 628-29) Unlike the March 27, 2020 direction, this was signed by the contracting officer, but he did not cite the government's right to terminate the CLINs for the convenience of the government as a basis for the action (R4, tab 38a at 629). On July 31, 2020, Heartland expressed concern with what it viewed as unauthorized unilateral changes to the contract in violation of the changes clause at FAR 52.21204(c) and offered to continue negotiations (R4, tab 39). The negotiations were ultimately unsuccessful. The government transmitted one last proposed modification that would have had Heartland produce training videos in place of in person training sessions (R4, tab 44 at 628, 44a at 639). This was rejected by Heartland because the proposed reduced price would "not account for the costs already incurred by Heartland in being prepared to deliver the services required by the existing scope of work within the period of performance" (R4, tab 45 at 685). The remaining invoices were first submitted with charges for the affected tasks and rejected (R4, tabs 77 at 727, 79 at 729). The government subsequently accepted modified invoices that did not include the monthly allocated charges for the affected line items (R4, tabs 74 at 724, 76 at 726, 78 at 728, 80 at 730).

### III. *Heartland's Claim and Appeal*

Heartland submitted a certified claim in the amount of $211,624.52 plus interest on January 4, 2021, for nonpayment against the affected CLINs, asserting that no bilateral change was made to task order 3 pursuant to FAR 52.212-4(c) (R4, tab 1 at 1-2). The parties unsuccessfully attempted to negotiate a resolution to Heartland's claim (R4, tabs 52 at 698, 59 at 708). On July 12, 2021, Heartland appealed to the Board, asserting jurisdiction based upon a deemed denial by the contracting officer. In its complaint, dated July 12, 2021, Heartland pleaded the existence of "a contract for commercial services" (compl. ¶ 8).

6

## I.    *Standard of Review*

We will grant summary judgment only if there is "no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted).  A material fact is one that may affect the outcome of the decision.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment."  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987).  Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion.  *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984).  "A genuine issue of material fact arises when the nonmovant presents sufficient evidence upon which a reasonable fact finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant."  *C. Sanchez and Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993) (citation omitted).

## II.    *There Was a Constructive Partial Termination for Convenience*

The government moves for summary judgment, asserting that it has no obligation to pay Heartland for work that Heartland did not perform, or alternatively, that there was an actual or constructive partial termination for convenience of the relevant CLINs that excused the government from paying the firm-fixed price contract amounts for services not provided (gov't mot. at 16-22).  Heartland opposes the government's motion, asserting that the government's direction to stop performance of the CLINs was not issued by the contracting officer (app. resp. at 22-23) and that the termination for convenience clause in the contract does not apply to this task order because the task order is one for services rather than commercial items (app. resp. at 25-26).  We hold that there was a constructive termination for convenience of the relevant CLINs.

### A.    *Constructive Partial Termination for Convenience of The Government*

On March 27, 2020, the contract specialist directed Heartland to stop performance on CLINs 1004, 1008, 1010, and 1011 (R4, tab 8a at 410).  The contract

contains the commercial items provision, FAR 52.212-4[2] (R4, tab 2 at 193). The termination for convenience clause provides:

> (l) *Termination for the Government's convenience*. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. . . .

FAR 52.212-4(l). Thus, subject to the authority issue discussed below, the government possessed the right to terminate Heartland's performance of the relevant CLINs. The fact that the government did not cite the termination for convenience provision does not prevent us from treating this as a termination for convenience. *See, e.g., R&R Sys. Sols., LLC,* ASBCA No. 61269, 19-1 BCA ¶ 37,269 at 181,359.

### B. *The Contract Specialist's Lack of Authority Makes This a Constructive Partial Termination*

Heartland asserts, and the government does not contest, that the March 27, 2020, direction to Heartland to suspend performance was issued by a contract specialist who was without authority to bind the government (app. resp. at 23; gov't reply at 9). The government contends that this was a procedural defect that was cured by the contracting officer's ratification, or that there was a constructive termination. We agree that there was a partial constructive termination for convenience.

Heartland is correct that a termination can only be ordered by an authorized contracting officer. A lack of authority issue normally arises before the Board when a contractor follows a direction from a government official without contracting authority and then the government disclaims that direction. However, here, the government affirms the instruction, and Heartland followed the government's direction. Had the direction come from an authorized representative, obviously Heartland would have been required to comply with the direction, and failure to follow the direction would constitute a breach of contract. With an invalid direction, had Heartland continued to perform the contract, it could have argued that the direction to discontinue performance was invalid, and attempted to bill for its performance.[3] Here, Heartland

---

[2] FAR 52.212-4 was modified after the events of this appeal and is now titled "CONTRACT TERMS AND CONDITIONS—COMMERCIAL PRODUCTS AND COMMERCIAL SERVICES" (NOV 2021).

[3] We make no findings as to whether Heartland would be entitled to payment for work performed following receipt of the March 27, 2020, direction to stop performance.

followed the direction and stopped performance. If we were to hold that the March 27, 2020, direction was not a constructive termination for convenience, Heartland would have been in breach of its duty to perform CLINs 1004, 1008, 1010, and 1011.

The government asserts that there was a termination for convenience (rather than a constructive termination) of the CLINs based upon the contracting officer's ratification (gov't mot. at 16-17). In this appeal, the distinction between actual and constructive termination for convenience is of no legal significance. That said, we do not see objective evidence of ratification by the contracting officer. In fact, when Heartland requested clarification as to whether the government's direction to stop performance on the CLINs was a termination for convenience, the government never responded (R4, tab 11 at 461). On July 22, 2020, nearly four months after the initial direction to stop performance, the contracting officer affirmed that Heartland was to stop performance, but still did not indicate that the CLINs were terminated for convenience of the government (R4, tab 38a at 628-29). In addition, Heartland's appeal is before the Board as a deemed denial because the contracting officer did not issue a final decision where he could have invoked a termination for convenience.

The contracting officer had knowledge of the contract specialist's instruction to stop performance but took no action to formally ratify the direction. "Ratification requires knowledge of material facts involving the unauthorized act and approval of the activity by one with authority." *Winter v. Cath-dr/Balti Joint Venture*, 497 F.3d 1339, 1347 (Fed. Cir. 2007) (citing *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1433-34 (Fed. Cir. 1998)). Ratification generally requires that the superior official have authority to ratify, knowledge of the subordinate's unauthorized act, and then act to adopt the unauthorized action. *Reliable Disposal Co.*, ASBCA No. 40100, 91-2 BCA ¶ 23,895 at 119,717. Here the contracting officer clearly had knowledge of the contract specialist's action, and possessed authority, but we see no evidence that he acted to adopt the unauthorized action. Instead, he unsuccessfully attempted to negotiate a bilateral modification to descope the CLINs. To ratify the subordinate's actions would have been to formally terminate the CLINs for convenience of the government, rather than allowing the task order to expire without clarifying the basis for the direction to suspend performance.

Despite the contracting officer's failure to terminate the CLINs for convenience of the government, the legal fiction of a constructive termination is clearly applicable. A "constructive termination of convenience [is] 'a legal fiction which imposes the standard limitations of the termination clause upon a plaintiff even though the termination was never actually ordered by the contracting officer.'" *Catherine Kurkjian*, ASBCA No. 61154, 20-1 BCA ¶ 37,594 at 182,538 (*aff'd sub nom. Kurkjian v. Sec'y of the Army*, 2021 WL 3520624 (Fed. Cir. Aug. 11, 2021), *cert denied*, 142 S.Ct. 1428 (2022)) (*quoting Kalvar Corp., Inc. v. United States*, 543 F.2d 1298, 1306 (Ct. Cl. 1976)).

9

> [A] Government directive to end performance of the work
> will not be considered a breach but rather a convenience
> termination – if it could lawfully come under that clause –
> even though the contracting officer wrongly calls it a
> cancellation . . . or erroneously thinks that he can terminate
> the work on some other ground.

*United Technologies Corporation Pratt & Whitney Group, Government Engines and Space Propulsion*, ASBCA Nos. 46880, 46881, 97-1 BCA ¶ 28,818 at 143,802 (quoting *G.C. Casebolt Co. v. United States*, 421 F.2d 710, 712 (Fed Cir. 1970)).  In a constructive termination for convenience, the government's actions can amount to a termination for convenience even in circumstances in which the government has stopped or curtailed a contractor's performance for reasons that turn out to be questionable or invalid.  *See Maxima Corp. v. United States*, 847 F.2d 1549, 1552-53 (Fed. Cir. 1988).  Here, the DoD COVID restrictions provided the contracting officer with a valid reason to direct Heartland to suspend performance; however, the contracting officer failed to actually terminate the CLIN, and instead attempted to negotiate a bilateral reduction in scope.  We hold that CLINs 1004, 1008, 1010, and 1011 were terminated for the convenience of the government.

### C.  *The Task Order Was for Commercial Services Under FAR Part 12*

Heartland's other challenge to a constructive termination for convenience is its assertion that FAR 52.212-4(l) is inapplicable to the task order, because the task order was a contract for services (app. resp. at 25-26).  Heartland premises this argument on the holding of the United States Court of Appeals for the Federal Circuit in *JKB Sols. & Servs., LLC v. United States*, 18 F.4th 704 (Fed. Cir. 2021).  In *JKB* the Federal Circuit held that the commercial items termination for convenience clause at FAR 52.212-4 did not apply to the services contract at issue in that appeal.  *Id.* at 710-11.  However, *JKB* does not control in this appeal for two reasons.  First, the task order in this appeal *is* a commercial items contract, and therefore is subject to FAR 52.212-4.  Second, even if the task order were a non-commercial services contract, we would read the applicable termination for convenience clause into the task order pursuant to the *Christian* doctrine.  *See, e.g., Fluor Intercontinental, Inc.*, ASBCA Nos. 62550, 62672, 22-1 BCA ¶ 38,105 at 185,101 n.4 (distinguishing *JKB* from a situation where, as here, the contractor has admitted that the contract was of the type covered by the contract's termination for convenience clause and noting that the *Christian* doctrine would read the applicable termination for convenience clause into the contract).

In *JKB*, the government did not dispute in its summary judgment motion *JKB's* characterization of the contract as a non-commercial services contract, and not a commercial items contract.  *JKB*, 18 F.4th at 710 n.2.  The Federal Circuit then treated

10

the contract as a non-commercial services contract. *Id.* at 710. Here, the contract at issue *is* a commercial items contract. The solicitation for the IDIQ contract applicable to this appeal, and the contract, both explicitly state that it is a solicitation for commercial items (R4, tabs 81 at 1, 2 at 186). In addition, Heartland's own complaint states that it was "a contract for commercial services" (compl. ¶ 8). Thus, Heartland's own compliant establishes that FAR 52.212-4 is applicable to the task order and provides the government with the right to terminate the task order for convenience of the government. Moreover, Heartland provides no argument in support of its allegation that the task order was for non-commercial services and not a FAR Part 12 commercial items acquisition (which includes commercial services)[4]. Heartland simply asserts that "[t]here is no doubt that Task Order 3 in question is for services and not items" (app. resp. at 3).

The Board is not bound by the parties' characterization of the contract. The determination of a contract type is a matter of law, *Maintenance Engineers v. United States*, 749 F.2d 724, 726 n.3 (Fed. Cir. 1984), and we are not bound either by what the contract is called or by the label attached to it by the parties. *Mason v. United States*, 615 F.2d 1343, 1346 (Ct. Cl. 1980). However, even if we were to determine that Heartland's task order was actually a non-commercial services contract, and not a commercial items contract, we would read the applicable termination for convenience clause into the contract pursuant to the *Christian* doctrine. That doctrine provides that a mandatory clause will be read into a government contract if it "expresses a significant or deeply ingrained strand of public procurement policy" *JKB*, 18 F.4th at 708 n.1 (citing *Gen. Eng'g & Mach. Works v. O'Keefe*, 991 F.2d 775, 779 (Fed. Cir. 1993)). Binding precedent holds that the termination for convenience clause is such a provision. *G. L. Christian & Associates v. United States*, 312 F.2d 418, 426-27 (Ct. Cl. 1963). *JKB* does nothing to change the applicability of the *Christian* doctrine. Procedurally, *JKB* was on appeal to the Federal Circuit from a grant of summary judgment by the Court of Federal Claims. The Federal Circuit held that the commercial items termination for convenience provision did not apply, because "the government simply incorporated a FAR provision that, on its face, applies only to commercial items contracts." *JKB*, 18 F.4th at 711. The court also recognized that the applicable termination for convenience clause could be read into the contract by the *Christian* doctrine. However, since the trial court had not considered this question in the first instance, the Federal Circuit remanded the question back to the trial court. *Id.* Here, it is clear that the subject contract was, indeed, a commercial items contract for services under FAR Part 12, and, as such, FAR 52.212-4(l) is applicable to the task order. Accordingly, Heartland's arguments must fail.

---

[4] FAR 12.102 Applicability reads: (a) This part shall be used for the acquisition of supplies or services that meet the definitions of "commercial product" or "commercial service" at 2.101.

*III.* *A Partial Termination for Convenience of A Fixed-Price Contract Line Item Is Treated Like a Cost-Type Line Item*

The government contends that its initial billing instructions, which directed Heartland to bill 1/12th of the firm-fixed CLIN amount each month, regardless of the work actually performed during that month, converted the task order into severable units accepted and received by the government such that the government bears no additional financial liability to Heartland (gov't mot. at 15-16; gov't reply at 17-18). Heartland contends that the modification of the billing procedure did not account for its costs incurred (app. resp. at 23-25, citing R4, tab 45 at 685).

The government's argument that the billing instructions converted the contract into severable units ignores its direction to Heartland to suspend performance. If, as we have found above, the direction was a constructive termination for convenience, Heartland is entitled to termination costs. If the direction was not a constructive termination for convenience, it would be a unilateral change and Heartland would be entitled to breach of contract damages. Pursuant to the termination for convenience clause, Heartland is entitled to

> . . . be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination.

FAR 52.212-4(l). "The termination for convenience of a fixed-price contract or line item has the 'general effect of' converting the contract or line item into a cost-reimbursement contract." *Phoenix Data Solutions f/k/a Aetna Government Health Plans*, ASBCA No. 60207, 18-1 BCA ¶ 37,164 at 180,917 (citing *New York Shipbuilding Co., A Division of Merritt-Chapman & Scott Corp.*, ASBCA No. 15443, 73-1 BCA ¶ 9852 at 46,019).

To the extent that Heartland contends that its monthly billing of 1/12th of the CLIN amount did "not account for the costs already incurred by Heartland in being prepared to deliver the services required by the existing scope of work within the period of performance" (R4, tab 45 at 685), it will be able seek reimbursement pursuant to the termination for convenience, with its costs being reviewed essentially as if the relevant CLINs were cost-type CLINs. However, this cost-type analysis conceivably could penalize Heartland if it performed less work on a CLIN than has already been compensated (that is, less than 7/12ths of the CLIN (September – March)). In that event, Heartland may have been overcompensated and may owe

12

money to the government.  Heartland has not submitted a termination settlement proposal, and we make no findings of fact regarding the costs it is entitled to claim.

CONCLUSION

For the reasons stated above, we grant the government's motion for summary judgment, in part, and hold that there was a constructive termination for convenience of the relevant CLINs.  However, this does not resolve the appeal.  Heartland's entitlement to further compensation, if any, will be addressed in further proceedings.

Dated:  September 12, 2022

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62979, Appeal of Heartland Energy Partners LLC, rendered in conformance with the Board's Charter.

Dated:  September 12, 2022

*for* Jammye D. Abbott

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals